UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DAMIEN SHELLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:16-CV-440-HBG |
| ) | |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 17]. Now before the Court is the Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 18 & 19] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 20 & 21]. Damien Shelley ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **GRANT** the Plaintiff's motion, and **DENY** the Commissioner's motion.

**I. PROCEDURAL HISTORY**

On January 11, 2013, the Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, claiming a period of disability that began on July 7, 2012. [Tr. 18, 136-42]. After his application was denied initially

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

and upon reconsideration, the Plaintiff requested a hearing before an ALJ. [Tr. 97]. Following a hearing [Tr. 30-54], the ALJ found the Plaintiff was "not disabled" [Tr. 15-29]. The Appeals Council denied the Plaintiff's request for review [Tr. 1-6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, the Plaintiff filed a Complaint with this Court on July 11, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the

Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## III. MEDICAL EVIDENCE

The Plaintiff alleges disability based on hypertrophic cardiomyopathy.[2] [Tr. 55, 71]. His cardiac impairment is treated by cardiologist, Gregory Brewer, M.D. The Plaintiff first presented to Dr. Brewer on July 17, 2012, due to a history of chest pain. [Tr. 256]. Diagnostic testing, including a 2D/M mode echocardiogram and color flow doppler echocardiogram, indicated hypertrophic cardiomyopathy. [Tr. 258]. The Plaintiff often complained of chest pain, shortness of breath, severe headaches, edema in all four extremities, nausea, sweating, light-headedness, dizziness, and fainting spells. [Tr. 218, 256-75, 380-89]. During a three day hospitalization on August 31, 2012, for severe chest pain, a heart catheterization was performed, revealing extensive

---

[2] "Hypertrophic cardiomyopathy occurs if heart muscle cells enlarge and cause the walls of the ventricles (usually the left ventricle) to thicken." *Hypertrophic Cardiomyopathy*, Am. Heart Ass'n, http://www.heart.org/HEARTORG/Conditions/More/Cardiomyopathy/ Hypertrophic-Cardiomyopathy_UCM_444317_Article.jsp#.Wcu_3-srK72 (last updated Mar. 29, 2017). As a result, "the thickened muscle makes the inside of the left ventricle smaller, so it holds less blood. The walls of the ventricle may stiffen, and as a result, the ventricle is less able to relax and fill with blood." *Id.* Symptoms include shortness of breath or trouble breathing, fatigue, swelling in the ankles, feet, legs, abdomen, and veins in the neck, dizziness, light-headedness fainting during physical activity, irregular heartbeat, chest pain, and heart murmurs. *Symptoms and Diagnosis of Cardiomyopathy*, Am. Heart Ass'n, http://www.heart.org/HEARTORG/Conditions/More/ Cardiomyopathy/Symptoms-and-Diagnosis%20-of%20Cardiomyopathy_UCM_444175_Article. jsp#.WcvAUOsrK7 (last updated Sept. 2, 2016).

muscle bridging in the mid and distal left anterior descending coronary artery with narrowing up to 70-80% in multiple areas. [Tr. 266, 278].

Dr. Brewer referred the Plaintiff to the cardiology division at the Cleveland Clinic. [Tr. 261]. An echocardiogram and MRI was performed on September 12, 2012, confirming hypertrophic cardiomyopathy with mid-cavitary obliteration. [Tr. 217, 233-35]. The examining physician suggested further diagnostic testing, including a right heart catheterization and imaging, and for the Plaintiff to continue medication prescribed by Dr. Brewer. [Tr. 218]. Based on recommendations from the Cleveland Clinic, Dr. Brewer ordered a cardiac PET scan on September 24, 2012, to evaluate for ischemia. [Tr. 268]. Imaging results were negative for transmural ischemia, but did indicate abnormal left ventricular ejection fraction of 47%[3] with mild global hypokinesis[4] and increased septal thickness with increased radiopharmaceutical uptake. [Tr. 269]. On January 9, 2013, after the Plaintiff received a second opinion from the University of Tennessee Medical Center [Tr. 274], Dr. Brewer noted that both tertiary referral centers had reached the same conclusion: that the Plaintiff required medial management and unroofing or stenting on the left anterior descending artery was not recommended. [Tr. 277].

The Plaintiff continued to present to Dr. Brewer through July 2014 with complaints of chest pain, shortness of breath, edema, and elevated diastolic blood pressure. [Tr. 377, 380, 383, 386,

---

[3] "Left ventricular ejection fraction (LVEF) is the measurement of how much blood is being pumped out of the left ventricle of the heart (the main pumping chamber) with each contraction." *Ejection Fraction*, Cleveland Clinic, https://my.clevelandclinic.org/health/articles/ejection-fraction (last visited Sept. 27, 2017). A normal LVEF ranges from 55% to 70%, and a LVEF ranging between 40 % to 54% is considered slightly below normal. *Id.*

[4] "Global hypokinesis means the heart strength is globally weak - all the walls are weak, as opposed to regionally weak - in which case one or more walls are weak and others ok." George Younis, M.D., Texas Heart Institute, http://www.texasheart.org/HIC/HeartDoctor/answer_1739.cfm (last updated Feb. 2012).

4

389]. On May 9, 2013, the Plaintiff reported passing out six times from coughing. [Tr. 380]. On July 1, 2013, another echocardiogram was performed, revealing left atrial enlargement with asymmetrical ventricle septal hypertrophy with ejection-fraction of 65%. [Tr. 383]. Dr. Brewer opined that the Plaintiff had non-obstructive hypertrophic cardiomyopathy[5] manifesting itself as asymmetrical septal hypertrophy[6] with a long segment of muscle bridging with persistent chest pain. [Tr. 385]. Dr. Brewer concluded that medical management was still the appropriate course of treatment. [*Id.*].

The record includes four medical opinions from Dr. Brewer. The first one, dated October 29, 2012, is an attending physician statement completed for a private insurer in connection with a request for long term disability benefits. [Tr. 402-04]. Therein, Dr. Brewer opined that the Plaintiff suffers from hypertrophic cardiomyopathy with muscle bridging – recurrent refractory chest pain. [Tr. 402]. Hypertension was listed as a secondary condition contributing to disability. [Tr. 403]. Symptoms of chest pain, shortness of breath, and edema were also indicated. [*Id.*]. Dr. Brewer opined that over the course of an eight-hour workday, the Plaintiff could not stand, sit, walk, or drive; he could use his upper extremities for repetitive functions such as simple grasping, pushing and pulling, and fine manipulation; he could occasionally bend, squat, climb, reach above shoulder level, kneel, crawl, use feet for foot controls, and drive; and he could lift or carry up to

---

[5] Non-obstructive hypertrophic cardiomyopathy occurs when "the thickened heart muscle doesn't block blood flow out of the left ventricle." *Hypertrophic Cardiomyopathy*, *supra* n.2.

[6] "[A]symmetric septal hypertrophy is a condition that occurs when heart muscles cells enlarge, causing the walls of the lower heart chambers (typically the left ventricle) to become thick and stiff. This makes it difficult for the heart to relax and for a sufficient amount of blood to fill the heart chambers." *Heart and Stroke Encyclopedia*, Am. Heart Ass'n, http://www.heart.org/HEARTORG/Encyclopedia/Heart-Encyclopedia_UCM_445084_ContentIndex.jsp?title=asymmetric%20septal%20hypertrophy (last visited Sept. 27, 2017).

10 pounds. [Tr. 404]. In terms of mental limitations, the Plaintiff had no limitation relating to other people beyond giving and receiving instructions, but was moderately limited in completing and following instructions and performing simple and repetitive tasks, and extremely limited in performing complex and varied tasks. [*Id.*]. Dr. Brewer rated the Plaintiff's cardiac functional capacity as a "Class 4 (complete limitation)."[7] [*Id.*].

A "Chest Pain Questionnaire" was also completed by Dr. Brewer on February 1, 2013. [Tr. 255]. Dr. Brewer described the Plaintiff's chest pain as occurring on the left side of his chest, lasting one hour to two days in duration, and radiating to his neck and down his left arm. [*Id.*]. Dr. Brewer did not identify any precipitating factors but indicated that the Plaintiff experienced pain with or without exertion and experienced evaluated blood pressure as an associated symptom. [*Id.*].

A second "Chest Pain Questionnaire" was completed on May 9, 2013. [Tr. 348]. Dr. Brewer described the Plaintiff's chest pain as occurring in the upper part of his chest, radiating to the arms, and worsened with exertion. [*Id.*]. Exertion was also identified as sometimes being a precipitating factor of chest pain. [*Id.*]. When the Plaintiff experienced pain, it lasted "minutes" and induced symptoms such as sweating and syncope. [*Id.*].

Finally, Dr. Brewer completed a medical source statement also dated May 9, 2013. [Tr. 349-50]. Dr. Brewer again listed hypertrophic cardiomyopathy and hypertension as the Plaintiff's

---

[7] According to the American Heart Association, doctors typically use a classification system that places an individual in one of four categories based on how much the individual is limited during physical activity due to cardiac disease. *Classes of Heart Failure*, Am. Heart Ass'n, https://www.heart.org/HEARTORG/Conditions/HeartFailure/AboutHeartFailure/Classes-of-Heart-Failure_UCM_306328_Article.jsp?appName=MobileApp (last visited Sept. 27, 2017). An individual with a "Class 4" rating, the most severe of the four classes, is described as follows: "Unable to carry on any physical activity without discomfort. Symptoms of heart failure at rest. If any physical activity is undertaken, discomfort increases." *Id.*

diagnoses. [Tr. 349]. Dr. Brewer indicated that the Plaintiff had adequate memory, concentration, and social ability. [*Id.*]. He further opined the Plaintiff had not limitations completing the following functions: the Plaintiff could remember and carry out simple, one to two step instructions and maintain a work routine without frequent breaks for stress related reasons; he could maintain socially appropriate behavior, hygiene, and grooming; he could respond appropriately to normal stress and routine changes; and he could care for himself and maintain independence in daily living tasks on a sustained basis. [Tr. 350]. The Plaintiff would, however, be unable to maintain an ordinary work routine without inordinate supervisions because of recurrent chest pain symptoms and would further be unable to maintain a work schedule without missing frequently due to psychological issues. [*Id.*]. Dr. Brewer elaborated that the Plaintiff "has profound coronary artery muscle bridging that results in significant obstruction during septole," and that he "has had 4 different cardiology groups evaluate [him] including Cleveland Clinic." [*Id.*].

## IV.     ALJ'S DECISION

In concluding that the Plaintiff was not disabled, the ALJ determined that the Plaintiff retained the residual functional capacity ("RFC") to perform:

> Light work as defined in 20 CFR 404.1567(b) except that he cannot climb ladders, ropes, or scaffolds. He cannot crawl. He cannot be exposed to pulmonary irritants. He cannot be in close proximity to moving or mechanical parts. He cannot work in high, exposed places. He is limited to performing work where co-worker and public contact is causal and superficial, where supervision is direct and non-confrontational, and where changes in the workplace are infrequent and gradually introduced.

[Tr. 22]. The ALJ discussed Dr. Brewer's treatment notes, cardiology diagnostic testing, including findings made by the Cleveland Clinic and University of Tennessee Medical Center, and the

7

Plaintiff's reported symptoms. [Tr. 22-23]. The ALJ then addressed Dr. Brewer's May 9, 2013 medical source statement wherein Dr. Brewer concluded that the Plaintiff could not maintain a full-time work schedule and would require inordinate amount of supervision. [Tr. 23]. The ALJ assigned "little weight" to the opinion, finding that "Dr. Brewer rendered an opinion primarily regarding the claimant's mental functional ability, and he is the claimant's cardiac physician." [*Id.*]. The ALJ did not discuss Dr. Brewer's other three opinions. The ALJ then proceeded to give "great weight" to the opinions of nonexamining, nontreating state agency physicians who opined limitations consistent with light work and various environmental limitations. [Tr. 23, 63-64, 80-82]. The ALJ found their opinions were "consistent with the medical evidence as a whole." [Tr. 23].

## V. ANALYSIS

On appeal, the Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because he gave "little weight" to Dr. Brewer's May 9, 2013 medical source statement without "good reason." [Doc. 19 at 14-22].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R. § 404.1527(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of

the source, and other factors which tend to support or contradict the opinion. § 404.1527(c)(1)-(6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. § 404.1527(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996).

Although the Plaintiff does not allege any error with regard to Dr. Brewer's October 29, 2012 Attending Physician Statement or his February 1, 2013 and May 9, 2013 Chest Pain Questionnaires, the Court finds that these opinions nonetheless warrant review by the Court. The Court will first address Dr. Brewer's Attending Physician Statement and Chest Pain Questionnaires, and then turn to the merits of the Plaintiff's specific arguments as to Dr. Brewer's May 9, 2013 medical source statement.

1. **Attending Physician Statement and Chest Pain Questionnaires**

Upon review of the ALJ's decision and the entire record, the Court finds, *sua sponte*,[8] that

---

[8] Although courts may treat a party's failure to raise argument on a particular issue waived, courts may order a remand on issues raised *sua sponte*. *See Berger v. Comm'r of Soc. Sec.*, No. 12-CV-11779, 2013 WL 4437254, at *9 n.3 (E.D. Mich. Aug. 16, 2013) ("Notably, in Social Security cases, the failure to submit a particular legal argument is 'not a prerequisite to the Court's reaching a decision on the merits' or a finding, *sua sponte*, that grounds exist for reversal."); *Buhl v. Comm'r of Soc. Sec.*, No. 12-10087, 2013 WL 878772, at *7 n.5 (E.D. Mich. Feb. 13, 2013) (plaintiff's failure to raise an argument did not prevent the court from identifying error based on its own review of the record and ruling accordingly), *adopted by*, 2013 WL 878918 (E.D. Mich. Mar. 8, 2013).

the ALJ erred when he did not weigh Dr. Brewer's Attending Physician Statement and Chest Pain Questionnaires. Implmenting regulations of the Social Security Act require that every "medical opinion" be considered and evaluated. 20 C.F.R. § 404.1527(b)-(c). A "medical opinion" is a statement from a physician, psychologist, or other acceptable medical source, that "reflect[s] judgments about the nature and severity of [a claimant's] impairment(s)," including symptoms, diagnosis, prognosis, and physical or mental restrictions. § 404.1527(a)(2). As described above, "good reason" must also be given for the weight assigned to a treating physician's medical opinion in the absence of the opinion receiving controlling weight. § 404.1527(c)(2).

Here, the Court finds Dr. Brewer's Attending Physician Statement and Chest Pain Questionnaires are medical opinions because they opine on the Plaintiff's symptoms, diagnoses, and functional restrictions. The Sixth Circuit Court of Appeals has determined that the failure to assign a specific weight to a treating physician's opinion constitutes error. *Cole*, 661 F.3d at 938. The purpose of the "good reason" rule is to allow claimants to "understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that [he] is not." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (quoting *Wilson*, 378 F.3d at 544) (internal quotation marks omitted). The ALJ erred in failing to adhere to this fundamental principle which the Court finds hinders it from conducting meaningful appellate review.

While the Sixth Circuit has instructed that courts should not hesitate to remand a case when an ALJ fails to adhere to the treating physician rule, *see Wilson*, 378 F.3d at 545, remand is not necessary if violation of the "good reason" rule is harmless, *Cole*, 661 F.3d at 940. Error is harmless when:

> (1) a treating source's opinion is so patently deficient that the

> Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527[(c)](2) . . . even though she has not complied with the terms of the regulation.

*Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (citation omitted). The Court finds that none of these exceptions apply in the present case.

Therefore, the Court will order that this case be remanded to the ALJ to weigh Dr. Brewer's October 29, 2012 Attending Physician Statement and February 1, 2013 and May 9, 2013 Chest Pain Questionnaires. To the extent that the opinions are not given controlling weight, the ALJ must provide "good reason" for the weight assigned.

### 2. May 9, 2013 Medical Source Statement

Arguing that the ALJ did not give "good reason" for assigning "little weight" to Dr. Brewer's May 9, 2013 medical source statement, the Plaintiff contends that the limitations opined by Dr. Brewer were appropriate and supported by the record. The Plaintiff concedes that the form completed by Dr. Brewer, which was sent by the Social Security Administration, is designed to determine mental health limitations. [Doc. 19 at 15]. The Plaintiff argues, however, that the specific limitations assessed by Dr. Brewer—that he cannot maintain an ordinary work routine without inordinate supervision or maintain a work schedule without missing work frequently—are limitations based on the Plaintiff's cardiac impairment, and as Plaintiff's treating cardiologist, Dr. Brewer could properly opine on such limitations. [*Id.* at 15-16]. The Court agrees.

The sole reason the ALJ assigned little weight to Dr. Brewer's opinion was because "Dr. Brewer rendered an opinion primarily regarding the claimant's mental functional ability, and he is the claimant's cardiac physician." [Tr. 23]. In other words, the ALJ believed that Dr. Brewer was opining on matters outside of his specialty or treatment of the Plaintiff. While requiring an

11

inordinate amount of supervision, for example, may not be a physical exertional limitation, it certainly is not immune from being a consequence of a physical impairment. To that end, work-related functional limitations like those opined by Dr. Brewer are not within the exclusive purview of mental health specialists. Therefore, the ALJ did not provide "good reason" for discounting Dr. Brewer's opinion.

Moreover, the ALJ's blanket rejection of Dr. Brewer's opinion says nothing about whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques or whether it is consistent with the other substantial evidence in the case record, thereby entitling the opinion to controlling weight. *See* 20 C.F.R. § 404.1527(c)(2). Dr. Brewer treated the Plaintiff for over a year, performed numerous diagnostic tests, obtained second opinions that confirmed Dr. Brewer's diagnosis and prognosis, and provided multiple opinions on the Plaintiff's impairment and resulting limitations. Even if Dr. Brewer's assessed limitations could properly be characterized as "mental limitations," the ALJ's reasoning fails to explain whether, and why or why not, Dr. Brewer's opinion is well-supported and consistent with other substantial evidence.

Declining to give Dr. Brewer's opinon controlling weight does not mean it is entitled to no weight. "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 . . . ." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4. The Court finds the ALJ did not consider all of the regulatory balancing factors beyond Dr. Brewer's specialization. There is no indication that the ALJ considered the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, or the opinion's consistency with the record as a whole. To be sure, the ALJ does not address the basis of Dr. Brewer's opinion—that is, that the Plaintiff requires an inordinate amount of supervision and cannot maintain a work schedule without missing

12

frequently because he "has profound coronary artery muscle bridging that results in significant obstruction during septole." [Tr. 350].

The Plaintiff also argues that the ALJ's error was compounded when he assigned "great weight" to the opinions of the nonexamining, nontreating state agency physicians without any explanation beyond a cursory finding that said opinions were "consistent with the medical evidence as a whole." [Doc. 19 at 20 (quoting Tr. 32)]. Indeed, the ALJ does not identify the "medical evidence" that is consistent with their opinions. "A more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379 (6th Cir. 2013). Although the ALJ discussed the medical evidence in general before he weighed the medical opinions of record [Tr. 22-23], nothing within the ALJ's discussion indicates why the medical evidence is more consistent with the opinions of the state agency physicians than that of Dr. Brewer.

Accordingly, the Court finds the ALJ did not provide "good reason" for the assignment of little weight to Dr. Brewer's opinion. Therefore, the Court will also remand the case on this basis as well and order the ALJ to reweigh Dr. Brewer's opinion.

## VI. CONCLUSION

Based on the foregoing, the Plaintiff's Motion for Summary Judgment [**Doc. 18**] will be **GRANTED**, and the Commissioner's Motion for Summary Judgment [**Doc. 20**] will be **DENIED**. The decision of the Commissioner will be **REMANDED** for further proceedings. Upon remand, the ALJ shall consider and evaluate Dr. Brewer's October 29, 2012 Attending Physician Statement, his February 1, 2013 and May 9, 2013 Chest Pain Questionnaires, and his May 9, 2013 medical source statement, assign each opinion a specific weight, and to the extent that the opinions are not assigned controlling weight, provide "good reason" for the weight assigned.

ORDER ACCORDINGLY.

_/s/ Bruce Guyton_
United States Magistrate Judge